# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RICHARD M. ZELMA,

    *Plaintiff,*

v.

PENN LLC d/b/a PULSETV.COM, *et al.*,

    *Defendants.*

Civil Action No. 19-8725

**OPINION**

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Richard M. Zelma alleges that Defendants Penn LLC d/b/a PulseTV.com ("Penn"), Pulse Direct Inc. d/b/a PulseTV.com ("Pulse"), and Jaffer Ali (collectively "Defendants") engaged in unlawful conduct by using an automatic telephone dialing system ("ATDS") to send six text messages to his cell phone without his express consent. D.E. 1-1, Ex. A ("Compl."). Currently pending before the Court is Defendants' motion to dismiss, D.E. 3,[1] and Defendants' motion for sanctions, D.E. 10. The Court reviewed the parties' submissions[2] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

---

[1] Defendants submitted an amended brief, D.E. 4, in support of their motion to dismiss three days after submitting their original brief. The Court did not grant leave to submit an amended brief, and Defendants did not provide an explanation for doing so, nor did they indicate which changes were made from their original brief. Plaintiff did not object. From the Court's limited review of both briefs, it appears the substantive arguments remain the same. Therefore, the Court will consider Defendants' amended brief in place of its original brief.

[2] Defendants' brief in support of their motion to dismiss will be referred to as "Defs.' Br." (D.E. 4); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 7); and Defendants' reply will be referred to as "Defs.' Reply" (D.E. 8). Defendants' brief in support of their motion for sanctions will be referred to as "Defs.' Sanctions Br." (D.E. 10-1); Plaintiff's opposition will be referred to as "Pl.'s Sanction Opp." (D.E. 11); and Defendants' reply will be referred to as "Defs.' Sanction Reply" (D.E. 12).

For the reasons stated below, Defendants' motion to dismiss, D.E. 3, is **GRANTED in part** and **DENIED in part**, and Defendants' motion for sanctions, D.E. 10, is **DENIED**.

I. BACKGROUND[3]

*Pro se* Plaintiff Richard Zelma is a resident of New Jersey. Compl. ¶ 3. Plaintiff's cellular phone number has been listed on the national and New Jersey "no-call-registries" since 2003 and 2004, respectively. *Id.* ¶¶ 19-20. Defendants Penn and Pulse are both Illinois companies sharing their principal place of business in Illinois. *Id.* ¶¶ 4-5. Defendant Jaffer Ali is the co-founder and CEO of PulseTV and is domiciled in Illinois. *Id.* ¶ 7; D.E. 3-2, Ali Cert. ¶ 1. Between December 7, 2018 and January 17, 2019, Plaintiff received six text messages to his cell phone. *Id.* ¶¶ 27-29. The messages were sent by Defendants individually or through others[4] via an ATDS to market their products and services. *Id.* ¶ 32.

Plaintiff originally filed his Complaint in New Jersey Superior Court, alleging four counts: (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii); (2) violation of the TCPA, 47 U.S.C. § 227(c)(5); (3) treble damages for willful or knowing violation of the TCPA, 47 U.S.C. § 227(b)(3); and (4) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.* D.E. 1, Ex. A. On March 19, 2019, Defendants removed the case to this Court. D.E. 1. Defendants thereafter filed a motion to dismiss for failure to state

---

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] Specifically, Plaintiff alleges that "[t]he Defendants and each of them, individually or thorough [sic] others herein identified as DOE or XYZ Corporation defendants, used an ATDS to initiate in text messaging to market their products and services." Compl. ¶ 32.

2

a claim. D.E. 3. Plaintiff filed opposition, D.E. 7, to which Defendants replied, D.E. 8. Defendants also filed a motion for sanctions. D.E. 10. Plaintiff filed opposition, D.E. 11, to which Defendants replied, D.E. 12.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Because Plaintiff is proceeding *pro se*, the Court construes the Complaint liberally and holds it to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519,

3

520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## B. Rule 11

Federal Rule of Civil Procedure 11 imposes on any party who presents "a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).[5] "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted). Attorneys are required to conduct a "normally competent level of legal research to support the[ir] presentation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

---

[5] Rule 11(b) provides in pertinent part as follows:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose . . .;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support[.]

Fed. R. Civ. P. 11(b)(1)-(3).

4

By its plain terms, Rule 11 applies to unrepresented parties. *See* Fed. R. Civ. P. 11(a) ("or by a party personally if the party is unrepresented"), 11(b) ("an attorney or unrepresented party certifies"). As a result, "[p]*ro se* litigants are not shielded from the sanctions offered by Rule 11." *Skoorka v. Kean U.*, No. 16-3842, 2017 WL 6539449, at *3 (D.N.J. Dec. 21, 2017) (citing *Wong v. Bank of N.Y.*, No. 14-5212, 2016 WL 1597309, at *3 (D.N.J. Apr. 21, 2016)). In this context, however, a *pro se* litigant is generally "given greater leeway in following the technical rules of pleading and procedure." *Id.* (citing *Metropolitan Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 125 (3d Cir. 2012)).

If Rule 11(b) is violated, then Rule 11(c)(4) permits the Court to impose sanctions, including reasonable attorneys' fees, expenses, or nonmonetary directives. However, any sanction "must be limited to what suffices to deter repetition of the [sanctionable] conduct[.]" Fed. R. Civ. P. 11(c)(4). "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co.*, 930 F.2d at 289 (internal citations and quotations omitted). Additionally, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n.28 (3d Cir. 2009) (citation omitted). In deciding a Rule 11 motion, "[a]ny doubt . . . should be resolved in favor of the party charged with the violation." *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

Finally, when a Rule 11 motion for sanctions is made by a party, rather than by a court pursuant to Rule 11(c)(3), the rule contains a separate requirement. Specifically Rule 11(c)(2) requires in pertinent part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly

> violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).

## III. LAW AND ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim

As noted, Plaintiff asserts four Counts against Defendants: (1) violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii); (2) violation of the TCPA, 47 U.S.C. § 227(c)(5); (3) treble damages for willful or knowing violation of the TCPA, 47 U.S.C. § 227(b)(3); and (4) violation of the NJCFA, N.J.S.A. § 56:8-1 *et seq.* D.E. 1, Ex. A. Defendants move to dismiss all Counts.

#### 1. Defendant Jaffer Ali's Individual Liability under the TCPA

The Court first addresses Defendant Jaffer Ali's individual liability under the TCPA. Plaintiff asserts his claims against Defendant Ali individually. Compl. ¶ 8. "Assuming that personal-participation liability is in fact available under the TCPA,[6] a corporation's officer 'may be personally liable under the [TCPA] if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.'" *City Select Auto Sales Inc. v. David Randall Associates, Inc.*, 885 F.3d 154, 162 (3d Cir. 2018) (quoting *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)). "In other words, a corporate officer can be personally liable if he 'actually committed the conduct that

---

[6] The Third Circuit noted that "there is a real question as to whether [corporate officers acting in their corporate capacity] can be held liable under the [TCPA] at all." *City Select Auto Sales Inc.*, 885 F.3d 154, 162 (3d Cir. 2018) (explaining that "[i]ndividuals ordinarily are shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield") (internal citation omitted).

violated the TCPA, and/or [he] actively oversaw and directed this conduct.'" *Id.* For example, an individual defendant can be held liable under the TCPA for "set[ting] up the automatic telephone dialing systems and design[ing] them" to function unlawfully. *McGee v. Halsted Financial Services, LLC*, No. 13-1555, 2014 WL 1203138, at *1 (D. Del. Mar. 19, 2014).

Here, Plaintiff fails to plausibly allege that Defendant Ali had any direct, personal participation in the allegedly unlawful conduct or that Defendant Ali personally authorized the allegedly unlawful conduct. Plaintiff merely claims that "Plaintiff sues Jaffer Ali individually under the New Jersey Responsible Corporate Officer Doctrine."[7] Compl. ¶ 8. Plaintiff, however, does not provide any specific facts evidencing that Defendant Ali authorized any unlawful conduct or that he directly participated in any unlawful conduct. Instead, Plaintiff's allegations against Defendant Ali appear to be based solely on Ali's position as co-founder and CEO of PulseTV. Such extrapolation is insufficient to adequately allege Defendant Ali's personal involvement in Defendant Penn or Defendant Pulse's purported unlawful conduct. Accordingly, the Court dismisses Counts One, Two, and Three as to Defendant Ali.

### 2. Counts One and Three as to Penn and Pulse

Plaintiff brings Count One for violation of 47 U.S.C. § 227(b)(1)(A)(iii) and Count Three for treble damages under 47 U.S.C. § 227(b)(3). Compl. ¶¶ 63-71, 79-89. Section 227(b)(1)(A)(iii) states, in relevant part, as follows:

> (A) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of

---

[7] The "Responsible Corporate Officer Doctrine," commonly referred to as the *Park* doctrine, permits the government to prosecute senior corporate officials for violations of the Food, Drug and Cosmetic Act ("FDCA"). *See United States v. Park*, 421 U.S. 658 (1974). The doctrine is not applicable in this case.

7

> the called party) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice . . .
>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

§ 227(b)(1)(A)(iii). Additionally, § 227(b)(3) provides for a private right of action under subsection (b). Under this subsection, a person or entity is entitled to "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." § 227(b)(3)(B). "[T]o state cause of action under the TCPA [for calls made to a cellular phone], a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an ATDS; (3) without the plaintiff's prior express consent." *Hale v. Creditors Relief LLC*, No. 17-2447, 2018 WL 2539080, at *4 (D.N.J. June 4, 2018) (quoting *Todd v. Citibank*, No. 16-5204, 2017 WL 1502796, *6 (D.N.J. Apr. 26, 2017)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Rando v. Edible Arrangements Int'l, LLC*, No. 17-701, 2018 WL 1523858, at *4 (D.N.J. Mar. 28, 2018) (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)).

Moreover, § 227(b)(3) states as follows:

> If the court finds that the defendant *willfully or knowingly* violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under [§ 227(b)(3)(B)].

§ 227(b)(3) (emphasis added). Taken together, Count One alleges that Defendants violated § 227(b)(1)(A)(iii), and Count Three alleges that Defendants *willfully or knowingly* violated § 227(b)(1)(A)(iii) such that the Court may impose treble damages pursuant to § 227(b)(3).

8

Defendants assert two arguments for dismissal. First, Defendants extensively rely on *Viggiano v. Kohl's Dept. Stores, Inc.*, No. 17-0243, 2017 WL 5668000, at *2 (D.N.J. Nov. 27, 2017), arguing that Plaintiff could have simply replied "Stop" to the offending text messages, which would have ceased any future text messages from Defendants. Defendants' emphasis on *Viggiano*, however, is misplaced. In *Viggiano*, the plaintiff received automated text messages on her cellular phone from the defendant. *Id.* at *1. Importantly, the plaintiff originally consented to receive the text messages. *Id.* Sometime thereafter, however, she attempted to withdraw her consent by replying to the automated text messages with various sentences indicating that she no longer wished to receive the messages. *Id.* Defendant continued to send plaintiff text messages, explaining that the only way plaintiff could opt out of the texts – *i.e.* withdraw her consent – was to reply "STOP" to defendant's text messages. *Id.* The "the only issue" before the court in *Viggiano* "[was] whether [p]laintiff ha[d] pled facts that support a finding she revoked consent in a reasonable manner such that [d]efendant's *continued* texts violated the TCPA." *Id.* at *3. (emphasis added). As such, *Viggiano* was only concerned with whether the plaintiff effectively withdrew her *initial* consent, so that defendant's *subsequent* text messages to plaintiff violated the TCPA. Here, Plaintiff alleges that he never consented to Defendants' text messages in the first place. Therefore, *Viggiano* is inapposite.

Second, Defendants rely on *Zemel v. CSC Holdings LLC*, No. 16-4064, 2017 WL 1503995, at *1 (D.N.J. Apr. 26, 2017), for the proposition that "[t]he TCPA was not enacted to prevent the harm claimed by [Plaintiff] – specifically, an unidentifiable loss of minutes on his cellular plan." Defs.' Br. at 13. Defendants argue that the "six [] text messages that were sent over the course of approximately one [] month could not have caused the type of harm which Congress intended to prevent." *Id.* Defendants cite the following language from *Zemel*:

> [T]hree text messages sent throughout a short period of time and in just one day is not what Congress intended to prevent [by enacting the TCPA]. Reading and responding to such text messages, and the time it required, could not have caused [p]laintiff the annoyance Congress intended to prevent. Because [p]laintiff has failed to allege why or how the small number of text messages caused him aggravation or nuisance, this Court cannot and will not infer such harm.

*Zemel v. CSC Holdings LLC*, 2017 WL 1503995, at *5. From the outset, the Court notes that *Zemel* concerned whether the plaintiff had suffered an injury-in-fact for purposes of Article III standing to survive a 12(b)(1) motion to dismiss. Defendants, however, cite *Zemel* in support of their 12(b)(6) motion to dismiss; Defendants do not raise a 12(b)(1) issue. *See* Defs.' Br. at 12-13; *see also Kaufman v. Dreyfus Fund, Inc.*, 434 F. 2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")). Nonetheless, the Court "has an independent obligation to determine whether it has subject matter jurisdiction." *Est. of Caruso v. Fin. Recoveries*, No 15-7936, 2017 WL 2704088, at *3 (D.N.J. June 22, 2017). The Court therefore turns to whether Plaintiff has standing to sue.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," and it thus "limits the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). On a motion to dismiss for lack of standing, "the plaintiff bears the burden of establishing the elements of standing." *Zemel*, 2017 WL 1503995, at *2 (internal citations omitted). The three elements of standing are: "(1) an injury in fact that is actual, not 'conjectural' or 'hypothetical;' (2) a causal connection between the injury and the conduct complained of; and (3) a showing that it is likely that a favorable decision will redress the injury." *City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D. 299, 309 (3d Cir. 2013) (citing *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). An injury in fact must be "concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan,* 504 U.S. at 560.

While Defendants cite to *Zemel* in support of their argument, the Third Circuit shortly thereafter decided *Susinno v. Work Out World Inc.,* 862 F.3d 346 (3d Cir. 2017). In *Susinno,* the plaintiff alleged that she received an unsolicited call – which she did not answer – on her cellphone from a fitness company who left a one-minute prerecorded promotional offer on the plaintiff's voicemail. *Id.* at 348. The plaintiff filed an action alleging that the single phone call and voicemail violated § 227(b)(1)(A)(iii) of the TCPA. *Id.* The District Court dismissed plaintiff's claim for, *inter alia,* lack of concrete injury. *Id.* On appeal, the Third Circuit addressed "the question of whether [the plaintiff] ha[d] alleged a sufficiently concrete injury to establish constitutional standing to sue." *Id.* at 350. The Third Circuit found that "[w]hen one sues under a statute alleging 'the very injury [the statute] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Id.* at 351 (quoting *In re Horizon Healthcare Services Inc. Data Breach Litig.,* 846 F.3d 625, 639 (3d Cir. 2017)).

In its analysis, the *Susinno* court stated that unsolicited automated or prerecorded telephone calls constituted the precise injury addressed by the TCPA. *Id.* The Third Circuit further indicated that the TCPA protects "essentially the same interests that traditional causes of action [*e.g.* invasion of privacy] sought to protect." *Id*; *see also Manuel v. NRA Group LLC,* 2018 WL 388622 (3d Cir. 2018) (citing *Susinno* and finding that an alleged violation of the TCPA was a sufficient "concrete injury to establish Article III standing"); *In re Horizon Healthcare Services Inc. Data Breach Litigation,* 846 F.3d 625 (3d Cir. 2017) (finding that an alleged violation of the Fair Credit

Reporting Act constituted an "injury in fact," even without evidence that the stolen information was used improperly); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (cited by *Susinno*, and holding that two unsolicited text messages constituted a concrete injury under the TCPA, as they were "the precise harm and infringe[d] the same privacy interests Congress sought to protect").

Here, Plaintiff's allegations of receiving six unsolicited text messages from an ATDS "is the very injury [the TCPA] is intended to prevent." *Susinno*, 862 F.3d at 351. In light of the Third Circuit's decision in *Susinno*, the Court finds that Plaintiff has sufficiently pled Article III standing. Because Defendants provide the Court with no other reason to dismiss Count One, Defendants' motion to dismiss Count One is denied.

With respect to Count Three, Defendants argue that Plaintiff has not pled that Defendants *willfully or knowingly* violated § 227(b)(1)(A)(iii) such that the Court may impose treble damages pursuant to § 227(b)(3). The Court disagrees. "Although the Third Circuit has not yet addressed the 'willful or knowing' requirement, districts courts within the Third Circuit have required more than a mere showing that the transmission of a [call] was itself intentional to warrant treble damages." *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 570 (E.D. Pa. 2019); *see also KHS Corp. v. Singer Financial Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) ("A defendant commits a willful and knowing violation of the TCPA if he or she sends an unsolicited [] advertisement that he or she knows to be a violation of the TCPA."); *Kline v. United N. Mortg. Bankers Ltd.*, No. 18-489, 2018 WL 4404674, at *2 (M.D. Pa. Sept. 17, 2018) (plaintiff adequately pled willful or knowing violation where complaint alleged that defendant "knew that [it] did not have [plaintiff's] prior . . . express consent" to make unlawful call; "knew . . . that [it] was using" an ATDS; and "knew . . . that [its] conduct . . . violated the TCPA").

Here, Plaintiff alleges that "Defendants knowingly or willfully violated the TCPA . . . when they resorted to 'robo' call and solicit Plaintiff . . . and initiated their text messages to Plaintiff without prior express written consent to do so." Compl. ¶ 81. Plaintiff adds that Defendants' "foregoing wrongful acts were knowingly made with false claims of a mis-dialed number." *Id.* ¶ 85. The Court finds that at this stage Plaintiff has sufficiently pled a knowing or willful violation of the TCPA. Accordingly, Defendants' motion to dismiss Count Three is denied.

### 3. Count Two as to Penn and Pulse

Plaintiff brings Count Two for a violation 47 USC § 227(c)(5), which provides a private right of action for violations of the Federal Communications Commission's ("FCC") regulations accompanying the TCPA. Plaintiff claims that Defendants "repeatedly initiated [the] text messages to a number that had been placed on the [national] no-call-list since its inception." Compl. ¶ 74. § 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation," and permits that person to seek an injunction, the greater of either actual damages or $500 per violation, or both. 47 U.S.C. § 227(c)(5). Section 227(c)(5) also creates an affirmative defense for a violating party who "has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." *Id.*

Pursuant to § 227(c)(1), the FCC implemented Regulation 47 C.F.R. § 64.1200. Courts in this District have proceeded under § 64.1200 when a plaintiff alleges a violation of the national do-not-call list. *See Sieleman v. Freedom Mortg. Corp.*, No. 17-13110, 2018 WL 3656159, at *2 n.3 (D.N.J. Aug. 2, 2018) (finding that although plaintiff alleged a violation of the FCC's internal do-not-call requirements under § 227, 47 C.F.R. § 64.1200 was instead "the relevant provision to

allege a violation of the [national] do-not-call list requirements"); *Dobkin v. Enter. Fin. Group*, No. 2:14-cv-01989, 2014 WL 4354070, at *2 (D.N.J. Sept. 3, 2014) ("[B]ased on these predicate violations of [§ 64.1200(c) and (d)], Plaintiff contends that Defendants violated [§ 227(c)(5) of] the TCPA.").

Here, it appears that Plaintiff's claim falls under § 64.1200(c).[8] Plaintiff brings Count Two for "unlawfully soliciting a number on the [national] no-call-list." Compl. at 12. The Court is mindful of Plaintiff's *pro se* status and therefore construes his claim under the correct regulation. *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). 47 C.F.R. § 64.1200(c) provides the following, in relevant part:

> (c) No person or entity shall initiate any telephone solicitation to:
> . . .
>
>> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:
>>
>>> (i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:
>>> . . .
>>>
>>>> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any

---

[8] Because Plaintiff received the text messages to his cell phone, the Court notes that 47 C.F.R. § 64.1200(e) expanded paragraph (c) "to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers[.]" *See also Sieleman*, 2018 WL 3656159, at *2 n.3.

14

> telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.
>
> (E) Purchasing the national do-not-call database. . . . It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers[.]

47 C.F.R. § 64.1200(c). Here, Plaintiff alleges that his cellphone number has been on the national no-call registry since 2003. Compl. ¶¶ 20, 74. Plaintiff also alleges that he has not removed his number from the national no-call registry. *Id.* ¶ 20. Plaintiff adds that Defendants "did not purchase a no-call subscription," *id.* ¶ 78, an allegation which Defendants do not appear to dispute in their moving papers. *See generally* Defs.' Br.; *see also* Defs.' Reply.

Rather, Defendants attempt to invoke the "affirmative defense" provision of 47 U.S.C. § 227(c)(5), which states that "[i]t shall be an affirmative defense in any action brought under [§ 227(c)(5)] that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Defendants contend that they have a "text program" that only sends text messages to people who "actively sign up to participate in the text program." Defs.' Br. at 15. Defendants also contend that they use "an inbound telemarketer to read a script whereby individuals may opt into the text program," which "confirmations are recorded on tape." *Id.*

Defendants' invocation of § 227(c)(5)'s affirmative defense cannot be considered at this stage of the case. Generally, the "Federal Rules of Civil Procedure require a defendant to plead an affirmative defense . . . in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). "To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense, . . . a defendant must show that 'the defense is "apparent on the face of the complaint" and documents relied on in the complaint.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)). Here, Defendants have not shown – and it does not appear – that § 227(c)(5)'s affirmative defense is "apparent on the face" of Plaintiff's Complaint. Accordingly, the Court denies Defendants Penn and Pulse's motion as to Count Two.

### 4. Count Four as to All Defendants

Count Four is against all Defendants for violation of the NJCFA. Compl. ¶¶ 90-98. The NJCFA proscribes the use of any "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]" N.J.S.A. § 56:8-2. To establish a *prima facie* claim under the NJCFA, a plaintiff must demonstrate "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Valli v. Avis Budget Grp., Inc.*, No. 14-6072, 2017 WL 1956777, at *4 (D.N.J. May 10, 2017) (citing *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007)).

Here, Plaintiff alleges that Defendants violated New Jersey's "Do Not Call Law"[9] when they allegedly engaged in prohibited solicitation by sending Plaintiff six text messages to Plaintiff's cellphone. Compl. ¶¶ 92-93. It appears, however, that Plaintiff's claim cannot be brought under New Jersey's "Do Not Call Law," N.J.S.A. §§ 56:8-119 to -130, because Plaintiff was not solicited via a "telephone call," but rather through text message. New Jersey's "Do Not Call Law" defines "telemarketing" as "any plan, program or campaign . . . to encourage the purchase or rental of . . . merchandise, but does not include the solicitation of sales *through media other than a telephone call*." N.J.S.A. § 56:8-120 (emphasis added). Similarly, "telemarketing sales call" is defined as "a *telephone call* made by a telemarketer . . . ." *Id.*

Plaintiff appears to acknowledge as much in his opposition brief, contending that "[on] November 1, 2016, [New Jersey] enhanced the [NJCFA] by specifically adding a new law that prohibits the sending of unsolicited advertisement by means of a text message to a resident of New Jersey[.]" Pl.'s Opp. at 26. It appears to the Court that Plaintiff is alluding to N.J.S.A. § 2A:65D, which became effective November 1, 2016, and prohibits an unsolicited advertisement by means of text messaging. Notably, however, Section 2A:65D-5 explicitly states that "[n]othing set forth in this act shall be construed as creating, establishing or authorizing a private cause of action by an aggrieved person against a person who has violated, or is alleged to have violated, the provisions of this act." As such, the amendment on which Plaintiff relies does not provide for a private right of action. Accordingly, the Court dismisses Count Four against all Defendants.

---

[9] Plaintiff's claim falls under what is commonly referred to as New Jersey's "Do Not Call Law," N.J.S.A. §§ 56:8-119 *et seq. See Zelma v. Art Conway*, No. 12-256, 2013 WL 6498548, at *1 (D.N.J. Dec. 11, 2013). Specifically, Plaintiff relies on N.J.S.A. § 56:8-130. Compl. ¶¶ 93, 98.

## B. Motion for Sanctions

As an initial matter, prior to moving for sanctions Defendants sent Plaintiff a frivolous litigation letter providing Plaintiff with twenty-one days to withdraw his Complaint, thus satisfying the safe harbor requirement under Fed. R. Civ. P. 11(c)(2). D.E. 10-2, Ex. B; *see also* D.E. 10-5. Plaintiff did not withdraw his Complaint. As such, Defendants now argue that sanctions should be imposed on Plaintiff – including dismissal of Plaintiff's Complaint – because "Plaintiff acted in bad faith each time he received a text message and deliberately chose to not reply 'STOP' as directed in each message," with the intent to file a lawsuit. Defs.' Sanction Br. at 9. Defendants also contend that Plaintiff's claims are not well-grounded in law. *Id.* The Court disagrees.

Defendants' argument that Plaintiff's claims are not well-grounded in law is rebutted by the fact that some of Plaintiff's claims have survived a motion to dismiss. In addition, Defendants provide no evidence to support their claim that Plaintiff acted in bad faith. In sum, the Court is mindful that "sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co.*, 930 F.2d at 289 (internal citations and quotations omitted). Importantly, "[a]ny doubt . . . should be resolved in favor of the party charged with the violation." *Sanders*, 1988 WL 58966, at *1 (citing *Eavenson*, 775 F.2d at 544). Here, the Court resolves all doubts in favor of Plaintiff and declines to exercise its discretion to impose sanctions. *See Grider*, 580 F.3d at 146 n.28 (3d Cir. 2009) ("[T]he imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory."). Accordingly, Defendants' motion for sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, D.E. 3, is **GRANTED in part** and **DENIED in part**. Defendants' motion for sanctions, D.E. 10, is **DENIED**. Plaintiff is provided with thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff fails to do so, then the counts in his Complaint which have been dismissed will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: January 17th, 2020

John Michael Vazquez, U.S.D.J.